UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


MARCOS A. MARTINEZ,              )
Administrator of the Estate      )
of JEFFREY MARTINEZ,             )
                                 )
              Plaintiff,         )     CIVIL ACTION NO.
                                 )     09-11431-DPW
v.                               )
                                 )
WILLIAM HUBBARD, BERNARD         )
HICKS, ROBERT P. COLBURN,        )
DONALD CAISEY, and SCOTT ROBY,)
                                 )
              Defendants.        )
                                 )


MEMORANDUM AND ORDER
March 18, 2016

Marcos Martinez, as administrator of the estate of Jeffrey
Martinez, filed this action against Boston Police Officers
William Hubbard, Bernard Hicks, Robert Colburn, Donald Caisey,
and Scott Roby, for assault and battery and constitutional
violations within the scope of 42 U.S.C. § 1983 and the
Massachusetts Civil Rights Act.  The Defendants moved for
summary judgment [Dkt. No. 93], asserting that (1) there is no
evidence in the record specific to any named defendant
establishing that he struck the vehicle in which Martinez was a
passenger, and (2) even if there were, the defendants are
entitled to qualified immunity.

In opposing the summary judgment motion, Martinez sought to open a second front by filing a motion [Dkt. No. 105] to strike the defendant's statement of material facts and for sanctions. That collateral initiative by plaintiff's counsel backfired when, at the summary judgment motion hearing, I raised the question whether Martinez's counsel should themselves be sanctioned for failing to comply with Local Rule 7.1 with respect to their Motion to Strike and for Sanctions.  I instructed Martinez's counsel to show cause by May 3, 2012 why they should not be sanctioned.  I directed Defendants' counsel to pursue the matter if they chose by filing a motion seeking sanctions and the costs incurred defending against Martinez's motion.  This the Defendants did through Docket No. 114. Martinez's counsel did not respond to the Order to Show Cause, but did respond to the Defendants' Motion for Sanctions.

At the summary judgment hearing, I also requested supplemental briefing on Count III of Martinez's First Amended Complaint.  My directions during the hearing and subsequent electronic order specified that Defendants' supplemental brief was due by May 10, 2012, and Martinez's response was due by May 17, 2012.  Defendants filed their brief, together with their motion for sanctions [Dkt. No. 114], but Martinez's attorneys — although filing their opposition to sanctions on May 17, 2012 —

2

did not bother to file a supplemental brief on behalf of
Martinez until June 1, 2012, two weeks after my deadline.
Defendants moved [Dkt. No. 118] to strike that brief as
untimely.

By electronic order dated September 30, 2012, I disposed of
the various pending motions promising a memorandum of opinion
providing an extended explanation for those orders. This is that
memorandum.

## I. BACKGROUND[1]

At approximately 1:45 a.m. on October 1, 2006, Hubbard was
on patrol in his police cruiser on Magnolia Street in
Dorchester, where a large number of people were leaving the area
following a party.  Officer Hubbard pulled behind an Acura which
had four people inside: Daniel Rodriguez, Andrew Vongsavay,
Rodriguez's girlfriend Melissa Sian, and Martinez.  Rodriguez
was driving, Vongsavay was in the passenger seat, and Martinez
and Sian were in the rear, on the driver's side and passenger's
side, respectively.

---

[1] Because this case was before me on a motion for summary
judgment, I recount the facts in the light most favorable to the
nonmoving party, Martinez.  In places where there are pronounced
disputes over facts, I note the parties' differences, but for
purposes of deciding the motion, I draw all inferences and
resolve all genuine factual disputes in Martinez's favor.

Hubbard claimed to see a crack in the windshield on the driver's side of the Acura which he thought would render the car unsafe to drive.[2]  He then checked the license plates of the Acura on his police-vehicle laptop, and discovered that they were reported as stolen.[3]

Hubbard attempted to pull the Acura over by turning on his

---

[2] Martinez claims that on summary judgment, I must take as true his contention that the crack was minimal or would be invisible to a person from Hubbard's perspective.  In support of this, Martinez cites "the credible testimony of both Rodriguez and his mother, both dis-interested non-parties" that "the crack was a small hairline crack on the passengers side under the registration sticker and only visible in bright sunlight if the viewer looked at it from the right angle."  The assertion that the driver of the vehicle involved in a fatal accident and his mother are "dis-interested," in a case claiming police officers caused the accident, is, at best, implausible.  In any event, the existence of the crack itself is not in dispute, and is irrelevant because it is undisputed that Hubbard ran the Acura's plates and discovered they were reported as stolen before pulling the vehicle over.

[3] Martinez claims the facts in the light most favorable to him show "that defendant Hubbard is lying about having seen the crack in the windshield" and therefore a reasonable jury could find that Hubbard "had no reason to check the plates and did not discover the status of the plates until after the defendants rammed the Rodriguez vehicle."  Martinez fails to dispute Hubbard's claim---that he checked the Acura's license plates before pulling the car over---with any citation to facts in the record.  Martinez's assertion that Hubbard is lying about when he discovered that the license plates were stolen is simply conjecture without adequate foundation to create a genuine issue of material fact.

police cruiser's lights.  He exited his cruiser and approached the vehicle.  As Hubbard approached the Acura, however, Rodriguez drove off.

Hubbard returned to his cruiser and followed in pursuit with his lights on.  Rodriguez drove away at high-speeds---an estimated 60-70 miles per hour---through Dorchester.  Rodriguez drove through at least one[4] red light as he drove from the party onto Columbia Road, past the intersection at Blue Hill Avenue, onto Jewish War Veteran's Memorial Drive, and past the Franklin Park Zoo.  At this point, on Jewish War Venteran's Memorial Drive, Officer Colburn joined the pursuit in his police cruiser.

Rodriguez proceeded through the rotary at the end of Jewish War Veteran's Memorial Drive, onto a ramp.  At the bottom of the ramp, a number of cars were stopped at a red light.  As Rodriguez and police officers approached, the vehicles pulled out of the way, and Rodriguez took a left through the red light onto Hyde Park Avenue.  Officer Hicks, who had been approaching from South Street, observed the Acura and then Hubbard and Colburn go through the intersection.  Hicks followed in pursuit.

---

[4] Vongsavay, the front seat passenger in the Acura, said that Rodriguez "didn't stop, no red lights no nothing" and that he was "blowing everything, red lights, stop signs."  Rodriguez admits to driving through one red light.

Hubbard got a flat tire after going through the intersection, and pulled to the side of the road shortly thereafter.[5] Officers Roby and Caisey, who were in an unmarked vehicle, joined in the pursuit just before Hubbard got a flat tire, but pulled over by Hubbard to check if he was ok. Officers Colburn and Hicks continued in pursuit of the Acura after also checking to make sure Hubbard was ok.

---

[5] Martinez, in one of the more confusing and contradictory portions of his generally confusing and contradictory submissions, admits that Hubbard struck the curb and that photos show Hubbard's vehicle with a flat tire, but nevertheless claims "that a jury could find that he sustained the flat tire when he rammed the Acura." This is flatly contradicted by Martinez's subsequent and repeated admissions that "Defendants Colburn and Hicks were the only two police vehicles close enough to the Rodriguez Acura to have rammed it." Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶¶ 55, 56, 57, Dkt. No. 99. Indeed, Martinez admits that Hubbard's cruiser "was disabled" by the flat tire, *id.* at ¶ 54, and that "[a]s the testimony of the defendants'[sic] themselves establishes, after defendant Hubbard had a flat tire, defendant Colburn and Hicks continued to pursue the vehicle down Hyde Park Avenue." *Id.* at ¶ 55.

There can be no dispute that Hubbard got a disabling flat tire; pulled over, and exited his vehicle to inspect the damage; and was passed by officers Colburn and Hicks before the Acura crashed. No rational jury could find, as Martinez tacitly admits, that Hubbard could have nevertheless returned to his vehicle, re-entered the high-speed chase, passed Colburn and Hicks in his disabled cruiser, and rammed Rodriguez's Acura all within the approximately half-mile between where Hubbard hit the curb and where the Acura ran off the road.

In her deposition, Rodriguez's girlfriend said that as they were driving down Hyde Park Avenue, she turned around and looked out the back window of the car, where she saw a police cruiser so close that she "couldn't even see their headlight[sic]."  As she turned back around in her seat, she felt a bump on the right side of the Acura.  Rodriguez then lost control of the car, which drove onto the sidewalk, where it ultimately hit a pole.

Colburn drove past the scene of the accident before turning around and driving back to it.  Hicks arrived moments after the crash.  Roby and Caisey heard a dispatch that the Acura had crashed, and drove down Hyde Park Avenue to the scene.

The occupants of the vehicle were taken to Children's Hospital.  Rodriguez's girlfriend sustained numerous fractures, and Martinez, who had been seated next to her, died of his injuries shortly after arriving at Children's Hospital.

## II. STANDARD OF REVIEW

A movant is entitled to summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party," and "[a] fact is material

if it has the potential of determining the outcome of the litigation." *Farmers Ins. Exch.* v. *RNK, Inc.,* 632 F.3d 777, 782 (1st Cir. 2011) (citation omitted).  However, "conclusory allegations, improbable inferences, and unsupported speculation" are insufficient to create a genuine issue of material fact to survive summary judgment.  *Sullivan* v. *City of Springfield*, 561 F.3d 7, 14 (1st Cir. 2009) (quotation and citation omitted).

As I must, I "view the facts in the light most favorable to the party opposing summary judgment."  *Rivera-Colón* v. *Mills,* 635 F.3d 9, 10 (1st Cir. 2011).

### III. MOTIONS TO STRIKE AND FOR SANCTIONS

At the outset, I address the motions to strike or motions for sanctions that bear upon the summary judgment motion before turning to the merits of the summary judgment motion itself. Martinez filed a motion styled as a Motion to Strike and For Sanctions, while the Defendants filed a Motion to Strike Martinez's untimely supplemental brief, and a Motion for Sanctions for violation of Local Rule 7.1.  I address each motion in turn.

### A.   *Martinez's Motion to Strike and For Sanctions*

Although styled as a Motion to Strike and For Sanctions, Martinez's motion [Dkt. No. 105] does not request that I strike anything---indeed, the word "strike" does not appear at all

except in the title.[6]  Instead, Martinez's motion seeks Rule 11 sanctions and attorneys' fees expended responding to defendants' statement of undisputed facts.  Since Federal Rule of Civil Procedure 11(c) requires that any motion for sanctions "be made separately from any other motion," I view Martinez's motion as one for sanctions only.  FED. R. CIV. P. 11(c).

Martinez, however, failed to comply with Local Rule 7.1 in filing this motion.[7]  Although plaintiff's counsel attached a 7.1 certification to his motion to strike, it is inadequate boilerplate.  In relevant part, Martinez's counsel's 7.1 certification stated: "Now comes Counsel for the plaintiffs who certify's [sic] that he called counsel for the defendants by phone on February 3, 2012, and that counsel."  Such a certification is incomplete; by terms it fails to certify that plaintiff's counsel notified defendants' counsel of the motion to strike and for sanctions.  Defendants' counsel, in his opposition to the motion to strike and for sanctions, contends

---

[6] The words "move to strike" appear a number of times in Martinez's response to the defendants' statement of undisputed facts, but that document is not a motion and Martinez's objections are not well founded in any event.

[7] Local Rule 7.1(a)(2) provides: "No motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue."

that Martinez's counsel never indicated during their 7.1
conference that he would be moving for sanctions.  This alone
would be reason enough to deny Martinez's motion.  *See United
States* v. *Vaughan*, 875 F. Supp. 36, 46 (D. Mass. 1995) (denying
a motion to suppress in part based on counsel's failure to
comply with Local Rule 7.1).  In fact, that failure is
sufficient to warrant sanctions against *Martinez*'s counsel as I
suggested at the April 26 hearing and as I discuss in Section
III.C below.  *See Converse, Inc.* v. *Reebok Int'l, Ltd.*, 328 F.
Supp. 2d 166, 171 (D. Mass. 2004) (sanctioning Converse $15,000
for failure to comply with Local Rule 7.1).

Even if Martinez's counsel had complied with Local Rule
7.1, Rule 11[8] sanctions would not be appropriate against

---

[8] Federal Rule of Civil Procedure 11(c) allows a district court
to impose sanctions if a party violates subsection (b) of Rule
11, which reads:

> (b) Representations to the Court. By presenting to
> the court a pleading, written motion, or other
> paper--whether by signing, filing, submitting, or
> later advocating it--an attorney or unrepresented
> party certifies that to the best of the person's
> knowledge, information, and belief, formed after an
> inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper
> > purpose, such as to harass, cause unnecessary
> > delay, or needlessly increase the cost of
> > litigation;
> >
> > (2) the claims, defenses, and other legal

10

defendants in this case.   A district court has "broad

discretion" when deciding whether to impose Rule 11 sanctions.

*Cooter & Gell* v. *Hartmarx Corp.*, 496 U.S. 384, 407 (1990).

Here, I find nothing in defendants' statement of undisputed

facts that warrants the imposition of sanctions under Rule 11.

The statement systematically sets forth the defendants' view of

the factual circumstances.   It is not a ground for sanctions.

## B.   *Defendants' Motion to Strike*

As noted above, at the hearing on the Defendants' motion

for summary judgment, I ordered the parties to file supplemental

briefs on Martinez's Massachusetts Civil Rights Act claim.

Defendants were ordered to submit their brief by May 10, 2012,

and Martinez was ordered to respond by May 17, 2012.   Defendants

---

contentions are warranted by existing law or by
a nonfrivolous argument for extending,
modifying, or reversing existing law or for
establishing new law;

(3) the factual contentions have evidentiary
support or, if specifically so identified, will
likely have evidentiary support after a
reasonable opportunity for further investigation
or discovery; and

(4) the denials of factual contentions are
warranted on the evidence or, if specifically so
identified, are reasonably based on belief or a
lack of information.

FED. R. CIV. P. 11(b).

11

complied with my order, filing their brief on May 10, 2012.
Martinez's counsel did not, filing his brief on June 1, 2012,
more than two weeks late.

    As a consequence, Defendants moved to strike Martinez's
supplemental brief as untimely filed [Dkt. No. 118].  Martinez's
counsel opposed, and explained his tardiness as an unfortunate
consequence of his mistaken interpretation of the directions I
gave to the parties at the hearing.  At that hearing, I gave the
Defendants fourteen days from the date of the hearing to file
their supplemental brief and Martinez twenty-one days from the
date of the hearing to file his responsive brief.  Fourteen days
from April 26, 2012 was May 10, 2012; twenty-one days from April
26, 2012 was May 17, 2012.  The electronic order I entered on
the docket after the hearing listed May 10 and May 17 as the
deadlines for the Defendants' brief and Martinez's response,
respectively.

    Martinez's counsel now claims that he understood "twenty-
one days" to mean "twenty-one days after the Defendants file
their supplemental brief," even though it was clear in context
that I gave counsel twenty-one days to file his supplemental
response from the date of the hearing.  In fact, at the hearing
I clarified that Martinez's counsel "will have May 17th for a
response," to which Attorney Brodie responded "Wonderful. Thank

12

you."  Even a cursory glance at the electronic order would have disabused counsel of his misconception and confirmed the deadlines the Clerk entered after the hearing I set for the briefing.  Apparently, Martinez's counsel chose not to consider the order, or if he did, did not think that any potential conflict warranted a phone call to the Clerk for clarification or a motion for an extension of time.

A district court is given substantial leeway in enforcing the deadlines it sets and orders it issues. *United States* v. *Roberts*, 978 F.2d 17, 21 (1st Cir. 1992).  Here, although the Defendants' motion to strike is certainly warranted, I decline to strike Martinez's untimely response.  I have read Martinez's filing and, as discussed below, granted summary judgment for the Defendants despite the arguments Martinez offers in that response.

## C.  *Defendants' Motion for Sanctions*

Martinez's counsel also failed to comply with Local Rule 7.1 in filing his Motion to Strike and for Sanctions against the Defendants.  At my invitation, Defendants moved for sanctions against Martinez's counsel.

As noted above, the Rule 7.1 certification that Martinez's counsel filed with his Motion to Strike and for Sanctions was incomplete because it failed to certify that Martinez's counsel

13

had notified Defendants' counsel of his intention to move for sanctions.  Not only was the certification incomplete, but at the time it was filed, Martinez's counsel had not in fact "conferred and [] attempted in good faith to resolve or narrow the issue" of sanctions with counsel for Defendants at all.

The parties did not confer pursuant to Rule 7.1 until February 3, 2012.[9]  At 3:22 p.m., Attorney Fischer (counsel for Martinez) left a voicemail for Defendants' counsel.  That voicemail stated:

> Andrew Fischer.  I'm at 617-423-7904.  This is a Rule 7.1 inquiry.  I'm asking that you withdraw the contested facts from your statement of facts that are disputed in our counter-statement of material facts.  If they are contested, they shouldn't be in there.  Can you let me know whether you'll withdraw them or whether I should file a motion to strike and for sanctions?

Defendants' counsel returned Attorney Fischer's call sometime between 4:00 p.m. and 4:30 p.m., but was unable to reach him and instead spoke to another attorney in Attorney Fisher's office, Attorney Andrew Brodie (who also represents Martinez).  Attorney Brodie did not suggest his firm's intention to move for sanctions during their conversation, and admits in his affidavit

---

[9] At the April 26, 2012 hearing, I ordered the parties to file affidavits concerning the Rule 7.1 certification. The following facts are drawn from those sworn affidavits.

that they only conferred over moving to strike disputed facts.

At 4:47 p.m., Attorney Fischer filed the motion to strike and for sanctions with the insufficient Rule 7.1 certification under his CM/ECF account.  That motion, as noted above, was in substance solely a motion for sanctions, which the submissions make clear the parties did not in fact "confer" about.  *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 475 (3d ed. 1986) (defining confer as "to hold conversation or conference now typically on important, difficult, or complex matters").

A Local Rule 7.1 certification is not an empty exercise. Local Rule 7.1 serves a meaningful dual role: it fosters discussion between parties about matters before they come before the court, and it preserves scarce judicial resources.[10]  Failure on the part of a litigant to comply with the rule not only affects the other parties, but it impedes the court's process as well.  And, as noted above, failure to comply with the rule constitutes sufficient grounds for a monetary sanction under the court's inherent power to control its docket.  *Converse, Inc.*, 328 F. Supp. 2d at 171.

---

[10] Indeed, as my late-colleague Judge Lindsay once noted, Rule 7.1 "was designed *primarily* for the benefit of an overburdened district court." *Converse, Inc.* v. *Reebok Int'l Ltd.*, 328 F. Supp. 2d 166, 171 (D. Mass. 2004).

In this case, Martinez's counsel has demonstrated a concerted disregard for both Local Rule 7.1 and Federal Rule Civil Procedure 11, which governs motions for sanctions.  There was no merit to Martinez's motion for sanctions, and it did not comply with either Local Rule 7.1 or Federal Rule 11.  Counsel for the Defendants expended 1.1 hours reviewing and responding to Martinez's motion to strike and for sanctions, and 5.8 hours drafting defendant's own request for sanctions, at what I find to be the reasonable rate of $200 per hour.  Because I find that sanctions are appropriate,[11] I will award Defendants compensation amount of $1,380.

### IV. MOTION FOR SUMMARY JUDGMENT

Defendants moved for summary judgment on Martinez's various claims.  For the reasons below, I will grant summary judgment for all of the defendants on all of Martinez's claims.

---

[11] Although Martinez's attorneys understandably do not on their own raise a defense of, or seek to mitigate their actions by recourse to, some variant on a theme of subcompetence, the record provides a basis for finding the legal work they performed in this case insufficiently attentive to professional standards.  I have considered *sua sponte* whether mitigation of sanctions might be justified on this ground, but find that it is not.  The unsupported resort by Martinez's counsel to sanction practice against Defendants' counsel suggests they were aware — at least to some degree — of the costs, benefits and demands of sanctions initiatives.  Having embarked on such initiatives themselves, they will be held to the consequences when that approach to litigation is thereafter supportably turned against them.

**A.   *Assault and Battery***

<u>1.</u>   <u>Assault</u>

In Massachusetts, the common law tort of civil assault requires a showing that the defendant (1) acted intending to cause a harmful or offensive contact with the person of another, and (2) the other was thereby put in such imminent apprehension. Restatement (Second) of Torts § 21.   Therefore, to survive on a motion for summary judgment, Martinez must show that one of the defendants intended to hit Rodriguez's car, and that Martinez (a passenger in the car) was put in apprehension of an imminent harmful or offensive contact by the officer.

Martinez did not meet his burden of proof on either element based on the record before me.   Martinez admits that he cannot point to the particular officer whose car struck the Acura, and therefore he cannot show that any one officer acted with the requisite intent.   *See* Pl,'s Response to Def.'s Statement of Undisputed Facts ¶ 33 ("Plaintiff is unable to determine which of the defendants rammed the Acura and killed the plaintiff . . . .").

Furthermore, there is no evidence in the record that Martinez was ever put in apprehension of the imminent or harmful contact.   While it is difficult to imagine that he was not aware of the police cruisers chasing the Acura, there is nothing in

the record to prove that he was in apprehension of an *imminent* harmful or offensive contact.  Indeed, of the three surviving occupants of the vehicle, only Sian stated that she turned around and saw officers close to the rear of the car immediately preceding the accident.  In their depositions, Rodriguez, Vongsavay, and Sian did not provide any circumstantial evidence pointing to Martinez's apprehension of an imminent contact.

Because there is no evidence in the record that any specific officer had the requisite intent,[12] or that Martinez was

---

[12] This is not a situation where the approach of *Summers* v. *Tice*, 199 P.2d 1 (Cal. 1948) would apply to make the multiple defendants jointly and severally liable.  In *Summers*, the plaintiff was injured when two hunters negligently shot in his direction.  Although the plaintiff was unable to prove which of the two hunters had fired the shot that struck him, the court held both hunters jointly and severally liable for the entire loss.  To recover, the plaintiff in *Summers* was required to prove the requisite negligence of *all* of the actors who *could have* caused his injury in order to get joint and several liability.  *Id.* at 85-87.  Here, only one of several defendants is alleged to have hit the Acura, but the plaintiff is unable to prove which one of the many defendants is responsible.  Martinez has no evidence of the intent of any one of the officers, let alone proof that all shared the same requisite intent necessary to make out a case for civil assault or, as discussed below, battery.  *See Eldgredge* v. *Town of Falmouth, MA*, 662 F.3d 100, 105-06 (1st Cir. 2011) (rejecting joint tortfeasor doctrine for § 1983 action where officers in cruisers were speeding while responding to a 911 call, one cruiser stopped suddenly to question two people on the side of the road, and another cruiser struck and injured one of the two people when the officer driving it was unable to stop in time).  Thus, even assuming Massachusetts were to adopt the California approach in *Tice*, I find the factual circumstances here well outside the *Tice* paradigm.

himself placed in apprehension of an imminent harmful contact,
he cannot make out a case for civil assault.  Summary judgment
on plaintiff's assault claim is warranted.

    2.   Battery

    In Massachusetts, the common law tort of civil battery
requires a showing that the defendant (1) acted intending to
cause a harmful or offensive contact with the person of another,
and (2) a harmful contact directly or indirectly resulted.
*Waters* v. *Blackshear*, 591 N.E.2d 184, 185 (Mass. 1992).  As
noted above, Martinez admits that he cannot point to the
particular officer whose car struck the Acura, and therefore he
cannot show that any one officer acted with the requisite
intent.[13]

---

[13] In his opposition to defendants' motion for summary judgment,
Martinez attempts to salvage these claims, and others, by
suggesting for the first time that the defendants are engaged in
a conspiracy to cover-up the identity of the person who struck
the Acura and shield him from liability.  The word "conspiracy,"
or indeed the factual basis for one, does not appear anywhere in
the First Amended Complaint.  Such "unsupported speculation" is
insufficient to survive summary judgment. *Sullivan* v. *City of
Springfield*, 561 F.3d 7, 14 (1st Cir. 2009).

  In any event, the case Martinez cites, *Gonsalves* v. *City of
New Bedford*, 939 F. Supp. 921 (D. Mass. 1996), is inapt.  There,
an arrestee was beaten to death by police in the police station,
and evidence showed that multiple police officers denied the
arrestee medical attention to hide the nature of his injuries
and later falsified reports about the incident.  The extent of

Consequently, summary judgment must enter for the defendants on Count I.

**B.   *Unlawful Seizure Under § 1983 and the MCRA***

1.   Fourth Amendment

To make out a § 1983 claim for an unlawful seizure in violation of the Fourth Amendment, Martinez must show that a specific officer intentionally acquired physical control over him.  *Brower* v. *County of Inyo*, 489 U.S. 593, 596 (1989).  No seizure occurs, and thus no Fourth Amendment violation is possible, until "there is a governmental termination of freedom of movement through means intentionally applied."  *Id.* at 597 (emphasis deleted).  It is not enough, in the pursuit context, that an officer "pursued and the pursuit resulted in a collision with another police vehicle."  *Horta* v. *Sullivan*, 4 F.3d 2, 10 (1st Cir. 1993).  Rather, to make out a Fourth Amendment seizure in the pursuit context, Martinez must show that the collision was intended by the officer as the means to end the pursuit.

Martinez faces the same hurdle he has failed to clear with respect to the assault and battery claim.  He has admitted that

---

the arrestee's injuries made it clear, however, that they had been caused by force; the arrestee had not sustained them merely falling in his cell.  Here, unlike *Gonsalves*, there is nothing resembling a cover-up alleged, let alone such a cover-up supported by the record before me.

he cannot show which officer caused the collision and crash, and therefore "seized" him pursuant to the Fourth Amendment. Martinez has failed to adduce sufficient evidence through specific citation to the record to establish that any one of the named defendants caused the accident, and each defendant has denied striking Rodriguez's Acura.[14]   Thus, Martinez is unable to show the requisite intent of the officer who caused the crash, because he cannot say which officer caused the crash in the first place.   Therefore, summary judgment is warranted on Martinez's Fourth Amendment unlawful seizure claim.

### 2.   Violation of the Massachusetts Civil Rights Act

Martinez also claims that officers seized him in violation of Article 14 of the Massachusetts Declaration of Rights, which

---

[14] Indeed, as noted above, Martinez has repeatedly, although inconsistently, taken the position that only Colburn and Hicks were close enough to have been the officers responsible for having hit the Acura.   *See* Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶¶ 55, 56, 57, Dkt. No. 99 (admitting that "Defendants Colburn and Hicks were the only two police vehicles close enough to the Rodriguez Acura to have rammed it"); *id.* at ¶¶ 69-70 (admitting that "Officer Roby's unmarked vehicle came to a stop in the area of Walk Hill Street where Officer Hubbard had pulled over" and that "Officers Caisey and Roby heard a dispatch that the Acura had crashed and continued south on Hyde Park Avenue.   As their cruiser approached the area of 362 Hyde Park Avenue, Officer Caisey observed police vehicles already stopped in the area and the Acura off the road by the soccer field.   He did not observe the Acura crash").   *But see id.* ¶ 72 (claiming "the jury could find that it was the Colburn vehicle, the Hicks vehicle or the vehicle operated by defendant Roby or Caisey that rammed the Rodriguez Acura").

he claims provides more protection than the Fourth Amendment.

Under Massachusetts law, "a pursuit, which, objectively considered, indicates to a person that he would not be free to leave the area (or to remain there) without first responding to a police officer's inquiry, is the functional equivalent of a seizure." *Commonwealth* v. *Stoute*, 665 N.E.2d 93, 97 (Mass. 1996). "Unless an officer has a reasonable suspicion to justify this type of pursuit," such a pursuit-as-seizure will violate Article 14. *See id.*

Reasonable suspicion inquiry turns on the facts and inferences known to the officer at the time, taken as a whole. *United States* v. *Arvizu*, 534 U.S. 266, 273 (2002). Reasonable suspicion exists where the officer "has a particularized and objective basis for suspecting legal wrongdoing." *Id.*

Here, even when the facts are taken in the light most favorable to Martinez, Hubbard had reasonable suspicion to support his pursuit of Rodriguez's Acura. Thus, assuming, as I do not, that Martinez has raised a genuine dispute whether a crack existed in the Acura's windshield,[15] and finding, as I do, that Hubbard discovered the Acura's license plates were reported

---

[15] As I recognized above, the only dispute is about the size of the crack and whether Officer Hubbard could see it from his vantage point.

22

stolen by querying the license plate number before signaling for

the car to pull over,[16] the discovery of the stolen license plate

is sufficient on its own to ground reasonable suspicion.  Thus,

before the pursuit ever began, Hubbard had reasonable suspicion

(indeed he had probable cause), sufficient to pull Rodriguez

over.  Therefore, Martinez's claim under Article 14 fails, and

summary judgment for the defendants is appropriate.[17]

## C.   *Due Process Violation*

To make out a claim for a due process violation---that is,

the deprivation of life, liberty, or property without due

process of law---Martinez must show not only that an officer's

conduct exhibited "deliberate indifference" with respect to his

rights, but that the officer's conduct "shocks the conscience."

---

[16] As noted above, Martinez failed to dispute, in any non-conclusory sense, with citations to facts in the record, Hubbard's claim that he ran the Acura's license plate before pulling the car over.  Thus, Hubbard's statement that he discovered that the license plates were stolen before pulling over the Acura is not a fact about which there is a genuine dispute.

[17] Summary judgment would also be appropriate because a "direct violation of an individual's constitutional right does not give rise to a MCRA violation."  *Howe* v. *Town of North Andover*, 854 F. Supp. 2d 131, 146 (D. Mass. 2012).  That is because the MCRA requires that the defendant threaten, intimidate, or coerce the plaintiff in order to cause the plaintiff to give up a constitutional right, *Swanset Dev. Corp.* v. *City of Taunton*, 668 N.E.2d 333, 337 (Mass. 1996), and the record does not suggest any such effort by police here to get Martinez to give up a constitutional right."

*Evans* v. *Avery*, 100 F.3d 1033, 1038 (1st Cir. 1996).  This is a demanding standard; "the acts must be 'such as "to offend even hardened sensibilities,"' 'uncivilized [ ] and intolerable,' 'offensive to human dignity,' or must constitute force that is brutal, inhumane, or vicious."  *Cummings* v. *McIntire*, 271 F.3d 341, 344 (1st Cir. 2001) (citations and quotations omitted) (alteration in original).

In *Lewis*, the Supreme Court noted that to obtain redress on a due process claim arising from a sudden pursuit case, a plaintiff must show that the officer had "a purpose to cause harm unrelated to the legitimate object of arrest."  *County of Sacramento* v. *Lewis*, 523 U.S. 833, 836 (1998).  "[H]igh-speed chases with no intent to harm suspects physically or worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressable by an action under § 1983." *Id.* at 854.

Here again, Martinez cannot point to which officer collided with the Acura.  Consequently, he also cannot identify any particular officer who may have engaged in conduct that "shocks the conscience."  Even if Martinez could overcome that hurdle, there is no evidence that any defendant had "a purpose to cause harm" sufficient to reach the heightened level of blameworthiness required by *Lewis*.

24

Martinez points to purported violations of Boston Police Rule 301 and argues that there is at least a jury question as to whether the officers' conduct "shocks the conscience."  That Rule, dated September 14, 1999, outlines the Boston Police guidelines and procedures for vehicular pursuits.  It notes that:

> Generally, pursuit driving is not justified and is prohibited *unless* the occupants of the vehicle are known to be wanted for the commission or the attempted commission of a violent or life threatening felony *or the vehicle is being operated in an erratic or dangerous manner which poses a threat of harm to the public if it is not stopped*.  The commission of a minor motor vehicle violation and/or operating a stolen motor vehicle are not sufficient to meet the above criteria.

*Id.* (emphases added).  Whether officers complied with Rule 301 would, of course, be a jury question.

However, summary judgment remains appropriate for the officers because a violation of a police rule does not support the proposition that any officer, let alone one specified by the plaintiff as the one who caused the Acura to crash, acted with "a purpose to cause harm unrelated to the legitimate object of arrest." *Lewis*, 523 U.S. at 836.  In the context of harm caused to an innocent bystander, the fact that officers had violated department regulations and ignored orders to stop the pursuit has been found to be insufficient to show that their conduct shocked the conscience. *See Ward* v. *City of Boston*, 367 F.

Supp. 2d 7, 13 (D. Mass. 2005).  Likewise, the fact that some
officer may have violated Rule 301 in that circumstance is
insufficient to show that his conduct was so depraved as to
shock the conscience.

Because there is no evidence in the record that any officer
acted with the intent "to cause harm unrelated to the legitimate
object of arrest," summary judgment is warranted.

**D.    *Equal Protection Violation***

Finally, Martinez makes an equal protection claim, arguing
that Hubbard had no reasonable suspicion to stop the vehicle in
the first place, other than the race of its occupants.  To avoid
summary judgment, Martinez must "tender competent evidence that
a state actor intentionally discriminated against h[im] because
[]he belonged to a protected class."  *Alexis* v. *McDonald's
Rests. of Mass., Inc.*, 67 F.3d 341, 354 (1st Cir. 1995).

Even when the facts are taken in the light most favorable
to him, Martinez has not adduced competent evidence that Hubbard
intentionally discriminated against him because of his race.
Though Martinez claims that Hubbard lacked reasonable suspicion
to stop the Acura, as I noted above, there is no genuine dispute
that Hubbard discovered that the Acura's license plates were
stolen before pulling the vehicle over.  Thus, it is undisputed

that Hubbard had a non-discriminatory reason to initiate the stop.

Courts have held that a plaintiff's equal protection claim may stand even if his arrest was valid and supported by probable cause when the plaintiff sufficiently alleged and provided evidence of intentional discrimination on the basis of race or another protected class. *See, e.g., Johnson* v. *Morel*, 876 F.2d 477, 479 (5th Cir. 1989) (per curiam) (holding that plaintiff stated viable Equal Protection Clause claim where officer humiliated and harassed the plaintiff on basis of race, prior to and during a lawful arrest), overruled on other grounds, *Harper* v. *Harris County*, 21 F.3d 597, 600 (5th Cir. 1994).

Here, however, Martinez's only "evidence" of intentional discrimination on the basis of race is the purported absence of reasonable suspicion to pull over the Acura and the sheer *ipse dixit* that Hubbard pursued the Acura "solely because the occupants were minority youths."[18]   As noted above, it is

---

[18] Martinez's entire argument in support of his Equal Protection claim is as follows:

> Here, the facts at summary judgment establish that the plaintiff and his companions, as minority youth, are members of a protected class and that defendant Hubbard attempted to pull over and then pursued the Rodriquez vehicle, not because of any reasonable suspicion, but solely because the occupants were minority youths. Plaintiff, in Section A(2) [the section of his brief

27

undisputed that Hubbard had reasonable suspicion to pull over the Acura for stolen license plates.   Therefore, summary judgment is appropriate on Martinez's equal protection claim, because Martinez has failed to "tender competent evidence that a state actor intentionally discriminated against h[im] because []he belonged to a protected class." *Alexis*, 67 F.3d at 354.

## E.   *Qualified Immunity*

Because there is no identified defendant who can be held liable for any of the claims Martinez makes, I have no occasion to reach the availability of qualified immunity for any defendant.   I note, however, in light of the Supreme Court's decision in *Scott* v. *Harris*, 550 U.S. 372 (2007), there is no basis to contest that given the recklessness with which Rodriquez was driving the Acura, the evidence of record establishes as a matter of law that in this case any identified

---

arguing that Hubbard could not have seen the Acura's windshield crack and therefore is lying about checking its license plates], has shown that defendant Hubbard could not and did not observe motor vehicle violations that would provide justification for the stop, much less the subsequent pursuit.

Thus, defendant Hubbard's attempted stop and pursuit of the vehicle in which the plaintiff was a passenger had the discriminatory intent necessary to support a claim for an equal protection violation.

police officer would have been acting reasonably in the pursuit of the car.

## V. CONCLUSION

For the reasons set forth above, I DENIED Martinez's motion to strike and for sanctions [Dkt. No. 105] and Defendants' motion to strike Martinez's untimely brief [Dkt. No. 118] and GRANTED Defendants' motions for summary judgment [Dkt. No. 93] and for sanctions [Dkt. No. 114].  With respect to sanctions, I now order the plaintiff's counsel, Messrs. Fischer and Brodie, whom I find to be jointly and severally liable for the sanctionable conduct, to pay attorneys fees to Defendants in the amount of $1,380.00.  The Clerk shall enter judgment for the Defendants including an award of $1,380.00 in attorneys' fees to Defendants, on the basis of this Memorandum.[19]


*/s/ Douglas P. Woodlock*_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

---

[19] I note that I summarily granted Defendants' Motion [Dkt. No. 16] to dismiss claims of municipal and supervisor liability as inadequately pled.  Since the absence of an underlying constitutional claim by municipal employees forecloses the municipal claims as a matter of law, that finding is sufficient to support judgment for all defendants in this matter.